IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01783-KLM

M.L.P.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Commissioner of Social Security,[2]

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KIRSTEN L. MIX**

    This matter is before the Court[3] on review of the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income Benefits ("SSI"). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

    The Court has reviewed Plaintiff's Opening Brief [#18][4]; Defendant's Response Brief [#19] ("Response"), Plaintiff's Reply Brief [20] ("Reply"), the Social Security Administrative

---

   [1] Plaintiff is identified by initials only pursuant to D.C.COLO.LAPR 5.2(b).

   [2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Mr. Kijakazi is therefore substituted for Andrew Saul as the Defendant in this suit pursuant to Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

   [3] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#15].

   [4] "[#18]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

Record [#14] ("AR"), and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED** for further fact finding.

## I.  Factual Background

On June 27 and July 16, 2016, Plaintiff applied for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income benefits, respectively. AR 202, 209, 243. Plaintiff sought benefits based on systematic lupus erythematosus ("SLE"), fibromyalgia, problems with breathing, eye and skin problems, arthritis throughout body, swollen joints, dry eyes, dry mouth, hearing loss, cognitive problems, memory problems, and constant pain. *Id*. A hearing was held before an Administrative Law Judge ("ALJ") on April 3, 2019 (*id.* 67-90), and Plaintiff's alleged onset date was amended to June 3, 2016. *Id*. 75-76.

Plaintiff was 49 years old on the amended onset date, and she was 52 years old at the date of the ALJ decision. AR 27, 162. Plaintiff reported completing two years of college. *Id*. 244-45.

On May 18, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). AR 37-53. An identical decision was issued on May 22, 2019. *Id*. 13-29. The Court will cite to the later May 22, 2019 decision that was considered by the Appeals Council. *See* AR 1.

The ALJ found at step one of the sequential evaluation that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and had not engaged in substantial gainful activity since June 3, 2016, the amended onset date. AR 15.

At step two, the ALJ found that Plaintiff has the following severe impairments: "systematic lupus erythematosus with Sjogren's; mild osteoarthritis of the right carpometacarpal ("CMC") joint; bilateral carpal tunnel syndrome; an affective disorder (called depression; major depressive disorder, or unspecified depressive disorder); and chronic pain disorder." *Id.* At step three, the ALJ found that none of these impairments alone or in combination met or medically equaled a listed impairment. *Id*. 16.

The ALJ then turned to Plaintiff's residual functional capacity ("RFC"), finding that she has the RFC to perform less than a full range of light work. Specifically, the ALJ found that:

> [Plaintiff] can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. She can stand and/or walk 6 hours and sit 6 hours of an 8-hour workday. She can never climb ladders, ropes, or scaffolds, and she can frequently stoop, kneel, crouch, crawl, or climb ramps and stairs. She can frequently handle, finger, feel, or operate hand controls with the bilateral upper extremities. She can have no more than frequent exposure to extreme cold. She can have no exposure to hazards, including unprotected heights or hazardous machinery. Mentally, she is limited to understanding, remembering, and carrying out no more than simple tasks and instructions, defined as those job duties that can be learned in up to 30 days' time.

AR 19. The ALJ determined at step four that Plaintiff cannot perform her past relevant work as a contract specialist, commercial insurance customer service representative, office manager, or production operations manager. *Id*. 27.

At step five, the ALJ considered Plaintiff's age and education (at least a high school education), work experience, and RFC. AR 27. The ALJ found that Plaintiff can perform other work in the national economy, such as cashier II, housekeeper cleaner, and product assembler. *Id*. 28. Thus, the ALJ found that Plaintiff is not disabled. *Id*.

The Appeals Council denied review on April 13, 2020 (AR 1-2), and the ALJ's decision became final for purposes of judicial review. See 20 C.F.R. §§ 416.1481,

422.210(a) (2019).  This appeal followed.

## II.  Standard of Review

Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262.  However, it "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### III.  Analysis

This case turns on the ALJ's evaluation of the medical opinions regarding Plaintiff's physical abilities.[5]  Plaintiff argues that the RFC determination regarding Plaintiff's physical abilities is not supported by substantial evidence because the ALJ did not properly weigh the opinion of consultative examiner Dr. Valencia.

Plaintiff is correct that the ALJ must consider all the medical opinions in the record and discuss the weight each opinion is assigned.  *Mays v. Colvin,* 739 F.3d 569, 578 (10th Cir. 2014).[6]  "[W]hen deciding what weight to assign to an opinion, an ALJ must consider the factors set forth at 20 C.F.R. §§ 404.1527(d) and 416.927(d)."  *Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009).[7]  "The opinion of an examining physician or psychologist

---

[5] While medical opinions were also issued as to Plaintiff's mental impairments which were addressed in the RFC, they are not at issue in this case.

[6] Effective March 27, 2017, the regulations changed the standard for evaluating evidence in social security cases, including medical opinions, for claims filed after that date.  *See Harris v. Saul*, No., 2021 WL 406080, at *2 (D. Colo. Feb. 5, 2021) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.927(c)(2)).  The revised regulations shift the nature and scope of what evidence is categorized as a medical opinion and significantly alter agency policies on the consideration of opinion evidence.  *See id.*   However, because Plaintiff's applications for benefits were filed prior to March 27, 2017, the revised regulations are not applicable to this case, and the Court evaluates the evidence under the previous regulations.

[7] The regulatory factors are: "'(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment

is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

In the case at hand, consultative examining physician David Valencia, M.D., limited Plaintiff to a range of sedentary work with only occasional reaching, pushing, and pulling. AR 398. Thus, Dr. Valencia opined that Plaintiff could: sit for about six to seven hours; stand for two to three hours; walk for five to six hours; lift five pounds frequently and ten pounds occasionally; carry five pounds frequently and ten pounds occasionally; and reach/push/pull bilaterally occasionally. *Id*. State agency medical consultant David Gillum, M.D. and psychological consultant Anne Naplin, Ph.D opined, on the other hand, that Plaintiff could do light, semi-skilled work with no restrictions. *Id*. 99-102, 104-07.

The ALJ gave "little weight" to Dr. Valencia's opinion, stating that it was unsupported by the "longitudinal evidence" discussed in the opinion, and that it "was based on a one-time examination, was highly speculative, and was reliant on [Plaintiff's] subjective allegations." AR 26. The ALJ further stated that "[t]he examination did [not] reveal any finding of strength loss, and [Dr. Valencia] merely relied on [Plaintiff's] tender points and subjective allegations of pain during range of motion testing." *Id*. Instead, the ALJ gave "significant weight to the State agency medical consultant's" finding that Plaintiff could

---

provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citations omitted).

perform a range of light, unskilled work, but found that Plaintiff "is more limited than this with her hands related to carpal tunnel syndrome and her pain from her purported fibromyalgia." *Id*.

Thus, in the RFC the ALJ found that Plaintiff could stand and/or walk 6 hours and "frequently handle, finger, feel, or operate hand controls with the bilateral upper extremities." AR 19.  The Commissioner argues that this struck "a reasonable middle ground[,]" and that Plaintiff is improperly asking the Court to reweigh the evidence. *Response* [#19] at 1-2. The Commissioner further argues that the ALJ "gave good, record-supported reasons" for his findings. *Id*. at 13.

The Court rejects the Commissioner's argument and finds that the ALJ did not properly weigh the opinions of Dr. Valencia.  First, the Court finds that the ALJ erred in giving little weight to Dr. Valencia's opinion on the basis that it was "highly speculative" and "reliant on [Plaintiff's] subjective allegations."  AR 26.  This is inaccurate, as there were objective findings that supported Dr. Valencia's opinion.  For example, Dr. Valencia found upon examination that Plaintiff had diffuse tenderness in extremity joints and muscles, and in assessing Plaintiff's range of motion, observed that Plaintiff was uncomfortable during testing of her cervical spine, shoulder joints, and hip joints with decreased range of motion. *Id*. 395-97.  Dr. Valencia also reviewed imaging of Plaintiff's right hand which showed small osteophytes in the first CMC joint consistent with degenerative arthrosis.  *Id*.  The failure of the ALJ to properly consider the objective findings that supported Dr. Valencia's opinion is error.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996) ("in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

Moreover, the ALJ gave reasons for assessing little weight to Dr. Valencia's opinions that are not supported by substantial evidence. The ALJ found, for example, that Dr. Valencia's opinion should be entitled to little weight because "[t]he examination did [not] reveal any finding of strength loss,[8] and he merely relied on [Plaintiff's] tender points and subjective allegations of pain during range of motion testing." AR 26. However, as the Tenth Circuit noted in a case with similar findings by the ALJ, "[i]n addition to being speculative inferences from medical reports that an ALJ may not make, *see McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir.2002), these examples reflect the ALJ's fundamental misperception of the nature of fibromyalgia." *Moore v. Barnhart*, 114 F. App'x 983, 990 (10th Cir. 2004).

Thus, findings of tender points and subjective allegations of pain are key to the diagnosis of fibromyalgia and its effect on a claimant. *Moore*, 114 F. App'x at 990-91. This is because fibromyalgia "'is diagnosed entirely on the basis of patients' reports and other symptoms.'" *Id*. (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). "Clinical signs and symptoms supporting a diagnosis of fibromyalgia include 'primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body.'" *Id*. at 991 (quoting *Green-Younger v. Barnhart,* 335 F.3d 99, 107 (2d Cir.2003)). Indeed, "'[t]he most striking and unique finding in [connection with fibromyalgia] is the presence of multiple tender points.'" *Id*. (quotation omitted). On the other hand, strength loss and a lack of other abnormal objective findings do not determine a diagnosis of or the

---

[8] The Court will give the ALJ the benefit of a doubt and infer that he was stating that the findings did *not* reveal any strength loss, even though he omitted that word. Otherwise, his explanation as to why he gave little weight to Dr. Valencia's opinion makes no sense.

severity of fibromyalgia, as "muscle strength, sensory functions, and reflexes" are generally normal in a claimant with fibromyalgia. *Id*.; *see also Brown v. Barnhart*, 182 F. App'x 771, 773 (10th Cir. 2006) ("normal muscle strength and a lack of results from objective laboratory tests for the presence or severity of fibromyalgia do not rule out the possible existence of the condition"). In fact, "it is the absence of symptoms ordinarily associated with joint and muscle pain that is one of the most striking aspects of this disease[,]" and an ALJ errs "in effectively 'requir[ing] objective evidence for a disease that eludes such measurement." *Moore*, 182 F. App'x at 991-92 (quotation omitted). The Commissioner's argument that Plaintiff's fibromyalgia was properly assessed in the RFC "in view of many normal or near-normal functional-type objective and clinical examination findings" (Response [#19] at 12) is misplaced in light of the above authority.

The Court also agrees with Plaintiff that there is additional evidence in the record, including objective medical evidence, that is supportive of Dr. Valencia's opinion. For example, in December 2015, a review of systems in connection with a visit to Peak Vista Community Health Centers ("Peak Vista") revealed Plaintiff was positive for extremity weakness, fatigue, malaise, back pain, joint pain, and neck pain which were found to be consistent with fibromyalgia. AR 364. Similar symptoms were found in other appointments with Peak Vista. *See*, e.g., AR 316, 327, 338, 345, 352, 388; *see also* 347 (finding on physical exam "swelling, tenderness, and redness of the mcp's bilaterally"), 353 (finding joint pain and joint swelling); 414 (finding multiple objective findings in connection with review of musculoskeletal system). The medical notes from August 15, 2017, indicate Plaintiff's musculoskeletal pain began twenty years prior, occurred constantly, was "burning, sharp and throbbing[,]" was aggravated by lifting, movement and pushing, had a severity level of

moderate to severe, and was located in the chest and shoulder. *Id*. 316. On August 15, 2017, Plaintiff was found to have 15 points of tenderness, and on September 6, 2017, was found on examination to have 18 points of tenderness in her chest, upper back, elbows, and knees. *Id*. 319, 466; *see also* 415. On November 2, 2016, a medical record reflects "fibromyalgia chronic" with moderate symptoms that "occur constantly", "[a]ggravating factors that include time, stress and pain", and "[r]elieving factors that include nothing at this time." *Id*. 345. On December 28, 2018, Dr. McGibbon found that Plaintiff's fibromyalgia was "uncontrolled[,]" that Plaintiff was having "severe fibromyalgia symptoms[,]" and that Plaintiff had extreme fatigue. *Id*. 411. The ALJ was required to properly consider this evidence in assessing the weight to be given to Dr. Valencia's opinion. *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (holding that an ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence'") (quotation omitted).

The Court also questions the ALJ's decision to give "little weight" to Dr. Valencia's opinion because it was based on a one-time examination, while giving "substantial weight" to the opinion of a nonexamining state agency physician. AR 26. The Court is concerned in connection with this finding that the ALJ may not have properly taken into account that the opinion of a consultative examiner such as Dr. Valencia is generally entitled to greater weigh than the opinion of a state agency consultant. *See  Lopez v. Comm'r, Social Sec. Admin.*, 2019 WL 6873164, at *5 (D. Colo. Dec. 16, 2019) (stating that "if the ALJ had simply discounted [a physician's] opinion for having only examined Plaintiff once without 'simultaneously discount[ing] [a physician's] . . . opinion for never having personally examined" Plaintiff, this may well have been reversible error). While this alone may not be

reversible error, as the ALJ gave other grounds for discounting Dr. Valencia's opinion, the Court believes that this should be clarified on remand given the other errors the Court found.

In arguing that a remand is not required, the Commissioner relies on the Tenth Circuit's opinion in *Tarpley v. Colvin*, 601 F. App'x 641 (10th Cir. 2015). The Court finds that case does not support the Commissioner's position. First, the Tenth Circuit in *Tarpley* reaffirmed in that opinion "that the existence or severity of fibromyalgia may not be determinable by objective evidence." *Id*. at 643. While it went on to state that "physical limitations imposed by the condition's symptoms" may be objectively analyzed, *id*., there is such evidence in this case as detailed previously.

The Commissioner further argues that "Plaintiff's symptoms were often described as only mild to moderate, improved, stable, controlled, and/or possibly even in remission on medications" and that the agency is permitted to consider treatment and medication effectiveness. *Response* [#19] at 7 (citing 20 C.F.R. § 404.1529(c)(3)(iv)-(v), (c)(4)). The Commissioner selectively cites the evidence and offers improper post-hoc rationales for the ALJ's decision. *Carpenter*, 537 F.3d at 1267 (holding that a post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance, and that "[j]udicial review is limited to the reasons stated in the ALJ's decision"). Moreover, to the extent the ALJ may have relied on effectiveness of medication in relieving Plaintiff's pain (*see*, e.g, AR 46), the ALJ failed to consider all the evidence on that issue. In addition to the evidence previously cited, Dr. Valencia found that despite treatment with medication, Plaintiff "continues to have insomnia, fatigue, and diffuse pain in her muscles and joints" as well as "brain fog which makes it difficult for her to concentrate or process information." AR 392; *see also* 411 (stating that Dr. McGibbon referred Plaintiff to a pain

management clinic because "narcotics can make fibromyalgia worse," and noting that medications Plaintiff was on could also cause serious issues which could rise to the level of "a medical emergency"). The ALJ did not properly consider these issues. *See also Clark v. Barnhart*, 64 F. App'x 688, 691 (10th Cir. 2003) (remanding the case to the agency when the ALJ did not properly consider fatigue; the ALJ's discount of the claimant's allegations of pain and other limitations was inadequate to disregard complaints of chronic fatigue).

The failure of the ALJ to properly weigh the opinion of Dr. Valencia in this case is harmful because he proffered limitations which would be disabling. For example, Dr. Valencia's opinion that Plaintiff could lift five pounds frequently and ten pounds occasionally; carry five pounds frequently; and carry ten pounds occasionally (AR 398) would preclude Plaintiff from light work; instead, Plaintiff would be restricted to sedentary work. *See* SSR 83-10, 1983 WL 31251. However, due to Plaintiff's age, the fact that she was determined to be unable to perform any past relevant work and does not appear to have any transferrable skills "ordinarily results" in a finding of disabled under the medical vocational guidelines. 20 C.F.R.4, Subpart P, Appendix 2, 200.00(g). In addition, Dr. Valencia opined that Plaintiff could only occasionally reach/push/pull laterally (AR 398), which limitations the ALJ rejected. Instead, the ALJ found that Plaintiff could "frequently handle, finger, feel, or operate hand controls with the bilateral upper extremities." AR 19. Consistent with the ALJ's RFC, the jobs that the ALJ found Plaintiff could do (*id*. 28) require frequent reaching. *See* DICOT 211.462-010, DICOT 323.687-014, 706.687-010. However, Plaintiff would be precluded from these jobs if Dr. Valencia's restrictions were given weight.

Based on the foregoing, the ALJ erred in not properly weighing Dr. Valencia's opinion, which is legal error, and the reasons the ALJ stated to give little weight to Dr.

Valencia's opinion are not supported by substantial evidence.  Accordingly, a remand is required.  See *Langley v. Barnhart*, 373 F.3d 1116, 1124 (10th Cir. 2004).

## IV.  Conclusion

In conclusion,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.[9]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).  See *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Plaintiff and **close** this case.

Dated:  February 9, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[9] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits.  See *Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993).  By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled.  See, e.g., *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).

Dated: February 9, 2022